UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THERESA W.,[1]

                                              Plaintiff,

                                                              Case # 19-CV-6541-FPG

v.

                                                              DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                            Defendant.

## INTRODUCTION

Plaintiff Theresa W. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act and for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 14. For the reasons that follow, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

In March 2013, Plaintiff applied for DIB and SSI with the Social Security Administration (the "SSA"). Tr.[2] 128, 197. She initially alleged disability beginning on August 1, 2011 due to depression, anxiety, nerve damage, memory problems from a stroke, and removal of two lipomas

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

and some muscle from her right arm. Tr. 128–29, 197. On March 17, 2016, Plaintiff and a vocational expert appeared and testified at a hearing before Administrative Law Judge Brian Kane (the "ALJ"). Tr. 197, 208. The ALJ issued a decision finding that Plaintiff was not disabled on May 31, 2016. Tr. 197–208. On June 30, 2017, after reviewing the ALJ's decision, the Appeals Council remanded the matter to the ALJ for further consideration. Tr. 214–17.

On April 5, 2018, Plaintiff again appeared and testified at a hearing before the ALJ. Tr. 20, 31. At the second hearing, Plaintiff requested a closed period of disability from December 25, 2012 through December 31, 2016, the date she returned to full-time work. Tr. 20, 40–42. On June 18, 2018, the ALJ issued a second decision finding that Plaintiff was not disabled. Tr. 20–31. On May 22, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks and brackets omitted).

**II.     Disability Determination**

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* §§ 404.1520(a)(4)(iv), (e)–(f), 416.920(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled.

3

*Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1560(c), 416.960(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity during the requested, closed period of disability. Tr. 23. At step two, the ALJ found that Plaintiff had one severe impairment: "lipoma, status-post removal." *Id.* At step three, the ALJ found that this impairment did not meet or medically equal any Listings impairment. Tr. 26.

Next, the ALJ determined that Plaintiff had the RFC to perform medium work, except Plaintiff can only occasionally reach or handle using her non-dominant left arm. Tr. 26. At steps four and five, the ALJ found that Plaintiff was not capable of performing her past relevant work but that there were other jobs that existed in significant numbers in the national economy that she could perform. Tr. 30. The ALJ therefore concluded that Plaintiff had not been disabled during the requested, closed period of disability. Tr. 31.

### II.   Analysis

Plaintiff argues that the ALJ erred in failing to find that her mental impairments were severe at step two. ECF No. 10-1 at 13–18. The Court agrees.

4

As an initial matter, if an ALJ finds at least one "severe" impairment, the "ALJ still must consider the impact of all of a claimant's medically determinable impairments when assessing a claimant's RFC" "[r]egardless of whether an impairment qualifies as severe or nonsevere at step two." *Boudreau ex rel. Boudreau v. Comm'r of Soc. Sec.*, No. 18-CV-6681, 2020 WL 1501752, at *4 (W.D.N.Y. Mar. 30, 2020) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). "[T]he Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *MacDonald v. Comm'r of Soc. Sec.*, No. 17-CV-921, 2019 WL 3067275, at *3 (W.D.N.Y. July 11, 2019) (brackets in original) (quoting *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)). If an ALJ finds that nonsevere impairments result in "mild" restrictions, the ALJ must analyze those restrictions in determining the claimant's RFC. *Id.* If the ALJ "fails to address nonsevere mental impairments in formulating a claimant's RFC, it is 'necessary to remand [the] case for further consideration.'" *Id.* (brackets in original) (quoting *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order)).

Here, the ALJ rejected several medical opinions regarding the limitations posed by Plaintiff's mental impairments and determined at step two that those impairments resulted in no more than mild limitations. Tr. 23–26. The ALJ, however, found that Plaintiff had a severe medically determinable physical impairment, Tr. 23, which obligated the ALJ to analyze the impact of Plaintiff's purportedly "mild" mental impairments in formulating Plaintiff's RFC. The ALJ did not do so and included no restrictions in Plaintiff's RFC to account for those limitations. Tr. 26–30. The ALJ merely included boilerplate language in his step two analysis indicating that his RFC "assessment reflect[ed] the degree of limitation [he] found in" his step two analysis. Tr. 26. Such boilerplate language does not absolve the ALJ of his obligation to consider nonsevere impairments in assessing a claimant's RFC. *Rogers v. Berryhill*, No. 16-CV-6349, 2017 WL

3483666, at *4 (W.D.N.Y. Aug. 15, 2017). Remand is required to correct this error. *MacDonald*, 2019 WL 3067275, at *3–4.

The Commissioner does not directly address this "legal error," *Parker-Grose*, 462 F. App'x at 18, but instead argues that the ALJ's step two determination was supported by substantial evidence. ECF No. 14-1 at 18–27 (citing primarily cases analyzing ALJ RFC assessments).[3] Even if that determination somehow absolved the ALJ of accounting for Plaintiff's purportedly mild mental impairments in his RFC assessment, the Court disagrees.

As the Commissioner points out, a nonsevere impairment is one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). But severity is not a high burden. "A nonsevere impairment is only a slight abnormality that would have no more than a minimal effect on the claimant's ability to work." *Dechert v. Comm'r of Soc. Sec.*, No. 18-CV-315, 2019 WL 3074061, at *2 (W.D.N.Y. July 15, 2019); *see also Schifano v. Astrue*, No. 12-CV-484, 2013 WL 2898058, *3 (W.D.N.Y. June 13, 2013) ("An impairment is severe if it causes more than a *de minimus* limitation to a claimant's physical or mental ability to do basic work activities."). Substantial evidence does not support the ALJ's conclusion that Plaintiff's mental health problems had only a minimal effect on Plaintiff's ability to work during the relevant period.

Plaintiff testified that during the relevant period: she had suicidal thoughts; she had difficulty concentrating, including fogginess from medication; she was told she was mentally unfit

---

[3] In the only case cited by the Commissioner that addresses this type of error, *Bell v. Berryhill*, the court found that, although the ALJ did not include any mental limitations in his RFC assessment, the ALJ did consider evidence of those impairments in formulating the claimant's RFC. No. 16-CV-193, 2017 WL 9516823, at *9 (W.D.N.Y. Oct. 25, 2017). Here, there is no evidence the ALJ considered Plaintiff's mental impairments in analyzing her RFC. Further, in *Bell* the ALJ's decision was supported by substantial evidence, including a medical opinion that claimant did "not have limitations in the ability to perform the basic mental activities of work." *Id.*

to drive; she would cry all day long on bad days; and she would self-isolate. Tr. 55–56, 61, 63–67; Tr. 486–87, 491 (noting self-isolation and focus issues on form Plaintiff submitted to the SSA). These symptoms were at least partially supported by the medical opinion evidence of record.

The ALJ gave "some weight" to the opinion of consultative examiner Susie O. Troxler, Ph.D. Tr. 24, 854. Dr. Troxler noted that Plaintiff complained of memory difficulty; difficulty comprehending and concentrating on tasks; emotional problems; depression; anxiety; and a litany of symptoms, including tearfulness, visual and auditory hallucinations, and suicidal ideations (and several suicide attempts in the distant past). Tr. 854–55. She diagnosed Plaintiff with major depressive disorder and anxiety disorder. Tr. 859. Dr. Troxler opined that Plaintiff: could respond to directions and perform simple tasks at a reduced rate of efficiency (due to impairments in her memory, persistence, and sustained concentration); would have some difficulty tolerating the stress and pressures associated with day-to-day work; and that she would be able to relate to others, including co-workers and supervisors. Tr. 858.

The ALJ gave "[l]imited weight" to the opinion of state agency medical consultant Tovah Wax, Ph.D. Tr. 24. Dr. Wax opined that Plaintiff's alleged limitations were "mostly credible." Tr. 134–44. Dr. Wax further opined that Plaintiff was moderately limited in understanding, remembering, and carrying out detailed instructions; in responding appropriately to changes in work setting; in performing at a consistent pace; and in interacting appropriately with the general public. Tr. 138–39, 148. Dr. Wax found that Plaintiff was capable of working in a low stress environment with low production and interpersonal demands. Tr. 148–49.

The ALJ did not discuss the opinion of state agency medical consultant Steven E. Salmony, Ph.D. Tr. 23–26.[4] Dr. Salmony opined that Plaintiff had medically determinable psychological

---

[4] This oversight is particularly perplexing. On June 30, 2017, the Appeals Council remanded this matter to the ALJ specifically noting that, in his initial decision, the ALJ failed to cite to or weigh this opinion. Tr.

7

impairments that were "severe and could reasonably be expected to impose limitations." Tr. 166. He found that these included moderate limitations: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing at a consistent pace; interacting appropriately with the general public; and responding appropriately to changes in the work setting. Tr. 170–71. He opined, however, that Plaintiff could understand and remember very short and simple instruction, maintain attention and concentration for two hours at a time to perform simple tasks, and work in a non-production-oriented environment with limited public contact. Tr. 170–72.

The Commissioner argues that the ALJ appropriately weighed the opinion evidence and gave "some" weight to the opinion of Dr. Troxler. ECF No. 14-1 at 23–24. In relevant part, however, the ALJ rejected all of these opinions, including Dr. Troxler's. Each opinion noted at least some limitations on Plaintiff's ability to do work, and rather than accounting for those limitations, the ALJ found that Plaintiff's mental health problems had only a minimal effect on Plaintiff's ability to work. *See York v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 259, 261–62 (W.D.N.Y. 2019) (holding that, although ALJ gave "partial" weight to "the only medical opinion evidence of record," the ALJ's rejection of the opinion in relevant part meant that the ALJ's RFC assessment was "not supported by substantial evidence"); *see also Garrett v. Comm'r of Soc. Sec.*, No. 17-CV-1009, 2019 WL 2163699, at *5 (W.D.N.Y. May 17, 2019) ("By not assigning significant weight to any opinions and, instead, assigning them only limited weight, the ALJ created an evidentiary gap in the record requiring remand.").

---

214, 216. The ALJ's failure to assess mental limitations in his RFC determination was also noted. Tr. 215. The ALJ was directed to, *inter alia*, "[g]ive consideration to the opinion evidence" and "[g]ive further consideration to the claimant's maximum [RFC]." Tr. 216.

Although the Commissioner is correct in arguing that there are circumstances where an ALJ may depart from the medical opinion evidence of record, an ALJ's ability to make inferences regarding the functional limitations caused by an impairment does not extend beyond that of an ordinary layperson. "While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor." *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (internal quotation marks and brackets omitted); *see also Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018) ("[T]he leeway given to ALJs to make common sense judgments does not necessarily extend to the assessment of mental limitations, which are by their very nature highly complex and individualized." (internal quotation marks omitted)). "[A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." *Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (summary order) (internal quotation marks omitted). The ALJ's analysis does not meet that standard here.

The Commissioner and the ALJ place great emphasis on Plaintiff's activities, including her ability to care for her grandson, to go to school (obtaining an online graduate degree), to participate in church-related activities through her small church, to volunteer, and to work. Tr. 23–26, 55–59, 79–85, 90–92, 959; ECF No. 14-1 at 19–23. Her substantial activities certainly weigh in favor of a finding that her impairments are not so substantial as to be disabling, but these activities do not show that her psychological symptoms have only a minimal impact on her functioning. There is evidence that several of these activities helped Plaintiff cope with her mental health symptoms and are therefore not necessarily indicative of her ability to do work outside of these activities. Tr. 964, 1353 (noting religion helped her cope with symptoms), 1320–21 (noting efforts to help others improved her mood), 1182, 1353 (noting that spending time with her grandson improved her

symptoms). Further, the evidence regarding the extent of some of these activities is, at best, mixed. Tr. 56–57, 118 (testifying that she had difficulty with school and that the instructors were aware of her impairments and "kind of lenient"), 59 (testifying that she never watched her grandson alone). There is also evidence that her mental health symptoms would act up when she overdid these activities, requiring her to self-isolate. Tr. 87, 1356. In any event, "a claimant need not be an invalid to be found disabled." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

The Commissioner claims Plaintiff experienced "essentially the same symptoms" during the relevant period and later when she returned to full-time employment, ECF No. 14-1 at 20–21, but this is a mischaracterization of the record. She indicated that she had "mental health impairments" during both periods, but she later clarified that her mental health symptoms improved with medication, which allowed her to return to work. Tr. 54–55, 57–58. The evidence that she was able to work in a training program that tolerated absenteeism, on a part-time basis during the relevant period, Tr. 67–68, 79–81, 84–86, lends some support to the ALJ's ultimate conclusion that her mental impairments were not disabling, but it does not necessarily support the ALJ's conclusion that Plaintiff's mental health problems resulted in only slight abnormalities. *See* Tr. 80–86, 88–89 (testifying that that work caused her mental health problems, including depression and that she would need to spend time self-isolating)

The Commissioner and the ALJ further emphasize normal mental health status notes. Tr. 23–26; ECF No. 14-1 at 21–22. But there are of course conflicting mental health status notes indicating more severe limitations. Records consistently note Plaintiff's anxiety and depression. *See, e.g.*, Tr. 959–72, 1182–83, 1195–99. There are also medical records indicating memory and concentration issues, Tr. 612, 963, 1360, suicidal ideations, Tr. 959, 962, 971, 974, 1186, 1193, 1318, 1355, 1364, self-isolation, Tr. 961–63, 1186, and crying, Tr. 963, 1185–86, 1193, 1353.

Plaintiff's medical records indicate she had good days and bad days. *E.g.*, Tr. 1322. "Cycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (internal quotation marks and brackets omitted).

Finally, the ALJ rejected Dr. Troxler's opinion, in part, because it was based on Plaintiff's subjective complaints. Tr. 24. This fact, however, "hardly undermines h[er] opinion as to [Plaintiff's] functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (internal quotation marks and brackets omitted). In short, the Court cannot say that substantial evidence supports the conclusion that Plaintiff's mental impairments have no more than a minimal impact on her ability to work.

Even assuming the Court could excuse the ALJ's step two error, the ALJ's analysis at that step regarding Plaintiff's limitations is insufficient to satisfy the ALJ's obligation to analyze Plaintiff's RFC. Absent sufficient analysis regarding the ALJ's formulation of Plaintiff's RFC, "the Court does not have an adequate basis for judicial review." *Drabczyk v. Comm'r of Soc. Sec.*, No. 18-CV-355, 2020 WL 4390701, at *5 (W.D.N.Y. July 31, 2020). Such an error creates "an evidentiary gap in the record requiring remand." *Zayas v. Colvin*, No. 15-CV-6312, 2016 WL 1761959, at *4 (W.D.N.Y. May 2, 2016); *see also Defrancesco v. Berryhill*, No. 16-CV-6575, 2017 WL 4769004, at *4 (W.D.N.Y. Oct. 23, 2017) (holding that the ALJ giving "little weight" to "the only physical medical opinion in the record created an evidentiary gap that require[d] remand"). Accordingly, remand is warranted for further development of the record.

11

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 14, is DENIED, and Plaintiff's Motion for Judgment on the Pleadings, ECF No. 10, is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 31, 2021
       Rochester, New York

                              HON. FRANK P. GERACI, JR.
                                    Chief Judge
                              United States District Court